989 So.2d 1201 (2008)
CAREY-ALL TRANSPORT, INC., Appellant,
v.
Frances Marie NEWBY, Appellee.
No. 2D07-5006.
District Court of Appeal of Florida, Second District.
August 13, 2008.
Rehearing Denied September 19, 2008.
*1203 Dallas A. Robinson and Christopher W. Wadsworth of Wadsworth, King & Huott, L.L.P., Miami, for Appellant.
Gregory P. Abaray of Allen & Echemendia, P.A., Lakeland, for Appellee.
VILLANTI, Judge.
This appeal requires us to decide whether Carey-All Transport, Inc.'s proposal for settlement served on Frances Marie Newby violated Florida Rule of Civil Procedure 1.442(c)(3). For the reasons noted below, we hold that the proposal for settlement did not violate the rule, and thus we reverse the trial court's order denying Carey-All's postjudgment motion for fees and costs.
Newby sued Carey-All and its former employee, Josh Delerme, for damages following injuries she sustained in a March 2004 vehicular accident involving a truck owned by Carey-All and driven by Delerme. Carey-All agreed that it was vicariously liable under the doctrine of respondeat superior, as Delerme was acting within the course and scope of his employment at the time of the accident. In September 2006, Newby voluntarily dismissed Delerme from the lawsuit, leaving Carey-All as the only defendant. In May 2007, eight months after Newby dismissed Delerme from the lawsuit, Carey-All served on Newby a proposal for settlement for $125,000, which Newby did not accept. The case proceeded to trial and the jury returned a verdict in favor of Newby for $85,538.07 which, after reduction for collateral sources, resulted in a net judgment of $75,538.07. Thereafter, Carey-All served a "Motion for Entitlement to Fees and Costs" on the basis that both the verdict and judgment[1] were at least 25% less than the proposal for settlement amount offered by Carey-All in May 2007 and hence that Carey-All was entitled to recover its fees and costs under section 768.79, Florida Statutes (2007).[2]
At the hearing on Carey-All's motion for fees and costs, Newby contended that the proposal for settlement was defective under rule 1.442(c)(3) for three reasons. First, she noted that Carey-All's proposal for settlement required Newby to sign a general release and that the general release attached to Carey-All's proposal for settlement defined "Carey-All" to include its agents, servants, employees, or former employees. Newby argued that this language encompassed Carey-All's former employee Delerme and, therefore, made this a "joint proposal" which failed to apportion or differentiate the amounts attributable to each defendant, as required by rule 1.442(c)(3). Second, Newby argued that the language of the general release was broad and created an ambiguity in the proposal for settlement, requiring judicial interpretation and thus making it invalid because it was unclear whether the proposal *1204 was made by one entity (Carey-All) or two entities (Delerme and Carey-All). Third, Newby argued that the proposal for settlement improperly required her to give up an additional right or claim extrinsic to the litigationthe right to sue Delerme individually if she later chose to do so. In a detailed order, the trial court agreed with Newby's arguments and denied Carey-All's motion. We reverse because the court incorrectly interpreted the law based upon the facts of this case.
Our resolution of the issue turns on a straightforward application of the language contained in rule 1.442(c)(3), which implements section 768.79. Rule 1.442(c)(3) provides:
A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party.
The proposal for settlement in this case, in relevant part, provided:
1. The Defendant claims this proposal is attempting to resolve all of the claims for affirmative relief made by the Plaintiff ... and all claims for affirmative relief which could have been raised as compulsory claims to this action....
....
4. The non-monetary terms of the proposal are: General Release and Joint Stipulation and Order of Dismissal. Attached as Exhibit A and B are the General Release and Stipulation and Order of Dismissal.
....
7. If accepted, Plaintiff, FRANCES MARIE NEWBY, agrees to dismiss with prejudice their [sic] action against the Defendant, CAREY-ALL TRANSPORT, INC.
The language of the "general release" that was attached to the proposal for settlement was typical of the language contained in many general releases. It defined the "Releasee" as "CAREY-ALL TRANSPORT, INC., its predecessors, successors... agents, servants and employees, and former employees." (Second emphasis added.) The parties do not dispute that the wording of the general release applied to Delerme, Carey-All's former employee, even though his name did not appear in the release. Their issue is whether the inclusion of "former employees" in the general release made the proposal for settlement a "joint proposal" which needed to be apportioned between Carey-All and Delerme. We conclude, based upon the facts of this case, that this was not a joint proposal for settlement.
It is clear that under rule 1.442(c)(3) a proposal for settlement made jointly by multiple partiessuch as an employee and a vicariously liable employer must apportion or differentiate the offer amounts attributable to each party offeror, even when one of those parties is simply vicariously liable. See Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276, 278-79 (Fla.2003) (holding that offers of judgment made by multiple offerors must apportion the amounts attributable to each party); D.A.B. Constructors, Inc. v. Oliver, 914 So.2d 462, 464 (Fla. 5th DCA 2005) (holding that settlement proposal must apportion the amount of the offer between the defendant-employee and the vicariously liable defendant-employer). However, in this case Delerme was not a "party" to the litigation when the settlement proposal was served because he had been dismissed from the lawsuit. Even after strictly constructing rule 1.442, as we are required to do because the rule and the offer of judgment statute are in derogation of common law, Willis Shaw Express, Inc., 849 So.2d at 278, we cannot *1205 conclude that an entity or individual who has been dismissed from a lawsuit is a "party" for purposes of rule 1.442 and section 768.79.
Black's Law Dictionary 1122 (6th ed. 1990) defines "party" as
a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought ... the party plaintiff or defendant...; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties.

(Emphasis added.) Thus, even though Delerme was obviously a person interested in the litigation, he was not a party to the litigation and apportionment was not necessary. Logically, an offer cannot be "joint" where the only party defendant in the lawsuit is the one making the offer. See RDR Computer Consulting Corp. v. Eurodirect, Inc., 884 So.2d 1053, 1056-57 (Fla. 2d DCA 2004) (holding that proposal for settlement by one defendant did not require a separate allocation for a second defendant whose name actually appeared in the style of the case but whom the plaintiff was not suing).
Newby argues that because case law sometimes uses the term "offeror" instead of "party," we should liberally construe the term "offeror" to include a dismissed party. However, she provided no case law holding that the offer of judgment rule and statute apply to anyone other than a present party to the litigation. We conclude that her interpretation of the rule and the statute would entail a linguistic stretch that would defy a straightforward application of the meaning of the term "party" under rule 1.442(c)(3).
We also reject Newby's argument that the proposal for settlement was ambiguous because it failed to state with particularity all nonmonetary terms, thereby requiring judicial interpretation to understand its intent. She specifically argued that the phrase "employees and former employees" contained in the general release was too broad and ambiguous, making it unclear whether the proposal for settlement was made by one entity or two entities. While Newby is correct that "a proposal for settlement should be as specific as possible, leaving no ambiguities so that the recipient can fully evaluate its terms and conditions," Nichols v. State Farm Mut., 851 So.2d 742, 746 (Fla. 5th DCA 2003), approved, 932 So.2d 1067 (Fla. 2006), this general principle does not make the proposal for settlement invalid in this case because Carey-All's proposal was not ambiguous. There was no doubt that the general release applied to any person or entity that needed to be released to prevent Carey-All from ever being sued again by Newby for injuries relating to this particular accident. This expressly included agents, employees, and former employees of Carey-All. Therefore, not listing Delerme by name in the release or in the proposal for settlement did not create an ambiguity in either document and did not mislead Newby.
In Board of Trustees of Florida Atlantic University v. Bowman, 853 So.2d 507, 509 (Fla. 4th DCA 2003), the court found unambiguous general release language which, as in this case, defined the released party very broadly to include the defendant's "agents, employees, and servants." The court noted that the language of the release clearly identified the claims the plaintiff was giving upall claims arising prior to execution of the release. Id. The Fourth District concluded that the expansive definition of the defendants contained in the release was clear and was "simply standard language in a general release that should be considered unambiguous *1206 and should not invalidate the proposal." Id. at 510.
The supreme court has noted that "it may be impossible to eliminate all ambiguity" in a proposal for settlement. Nichols, 932 So.2d at 1079. Thus, the rule "merely requires that the settlement proposal be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification." Id. Therefore, parties should not "nit-pick" the validity of a proposal for settlement based on allegations of ambiguity unless the asserted ambiguity could "reasonably affect the offeree's decision" on whether to accept the proposal for settlement. See id. In this case, we find that the settlement proposal was sufficiently clear to allow Newby to make an informed decision as to the rights she would be giving up if she accepted the proposal, even though it did not specifically reference Delerme by name.
Finally, Newby argues that Carey-All's motion for fees and costs was properly denied because the general release required her to give up the right to later sue Delerme, a claim "extrinsic" to the litigation. We fail to see any logic in this argument for two reasons. First, Delerme's inclusion in the release was the result of vicarious liability intrinsic to, not extrinsic to, Newby's claim against Carey-All. Second, precedent prevents Newby from bringing the dismissed party back into litigation after final judgment. See Hinton v. Iowa Nat'l Mut. Ins. Co., 317 So.2d 832, 838 (Fla. 2d DCA 1975) (holding that once a plaintiff obtains a judgment against an automobile owner for injuries resulting from an automobile accident and based on allegations that the automobile owner is liable because of the negligent acts of the automobile driver, the plaintiff is precluded from bringing a subsequent suit against the automobile driver based on the same accident). Thus, we reject Newby's argument that the proposal for settlement required her to give up a future claim extrinsic to the litigation.
Our holding is also in keeping with public policy in this area. "[G]eneral releases contained in proposals for settlement are enforceable to further the policy of encouraging settlements." Bowman, 853 So.2d at 509 (citing Mazzoni Farms, Inc. v. DuPont De Nemours & Co., 761 So.2d 306 (Fla.2000)). The goal of most settlement proposals is finality. Parties would be discouraged from making reasonable settlement proposals if they knew that minor or nonsubstantive objections whether real or imaginedcould defeat the application of section 768.79's fee-shifting provisions.
Accordingly, we reverse the trial court's order denying Carey-All's motion for fees and costs and remand for the trial court to determine the amount of reasonable fees and costs to be awarded to Carey-All.
Reversed and remanded with instructions.
FULMER and CANADY, JJ., Concur.
NOTES
[1] The offer of judgment statute defines the term "judgment obtained" as "the amount of the net judgment entered." § 768.79(6)(b), Fla. Stat. (2007). The supreme court has noted that "a party's entitlement to fees turns on the total judgment obtained and that `[t]he "judgment obtained" should not be equated with the jury's verdict.'" Frosti v. Creel, 979 So.2d 912, 916 (Fla.2008) (quoting Anderson v. King, 817 So.2d 1102, 1104 (Fla. 2d DCA 2002)).
[2] It is not necessary to engage in any further analysis of section 768.79's fee-shifting factors as Newby does not dispute that those prerequisites were satisfied in this case.